Case number 11-1677 Sandra Nezovich v. Hallmark Insurance et al. May it please the court, Mark Banovitz on behalf of Hallmark Insurance, the appellant. By way of very brief background, as I assume that you're all familiar with the background, the case arises out of a mid-air crash that took place near Rock Springs, Wyoming, involving a Cessna Skyhawk and a Cirrus SR-22. The issue has to do with my client's insurance policy issued to Franklin Aviation, which was the fixed base operator, or FBO, that rented the Cessna Skyhawk to the decedent, Mr. Nezovich. As we see in these cases, there's a flurry of lawsuits back and forth. The issue that we're faced with is whether Mr. Nezovich, in renting that Skyhawk from Franklin Aviation, was insured under the Hallmark policy that was purchased by Franklin, issued to Franklin, and for the purpose of protecting Franklin and its designees under the policy. You know, I do have a question regarding additional background, and that is that Franklin purchased the Hallmark policy. Correct. Because it's in the business of renting aircraft. Correct. As well as instructing individuals to learn how to fly the aircraft. Absolutely. So both those business interests are involved, and so Franklin has a policy that covers, Franklin has a policy that covers Franklin, but in the course of conducting its business. That is absolutely correct, and that's where we get to the what versus who, the scope of coverage versus who's insured. Right. The purpose is not only to cover Franklin, but also any permissive user of the aircraft, including, incidentally, student pilots who are permissive users and not renting, such as linemen that might be taking flight lessons. Well, let me ask you this, because you brought up student pilots and not renting. You know, does this case or should this case turn on the simple question of what did the pilot in this case, the decedent, what did he pay for? Did he pay to rent the aircraft, or did he pay to be instructed on the use of the aircraft? Well, the billing statements attached to Mr. Verheit's affidavit, I think, set forth the clear distinction between aircraft rental and flight instruction. Many FBOs, in fact, don't have their own instructors and use outside instructors. They're primarily in the business of renting the aircraft. I don't think the issue turns on that. No, but did he pay to rent the aircraft, or did he pay to be instructed on the aircraft? I think the unrefuted record in the case establishes that he both rented the aircraft and paid for flight instruction. Well, come on. You can't be instructed on the use of an aircraft without using the aircraft, but you can't pay for instruction without using an aircraft. So you're trying to link the two, but they're always linked, aren't they? Your Honor, I'm here to argue that... And certainly there are people who only rent without any instruction. Right, and I don't want to sound argumentative. Suffice it to say that you can, in fact, have flight instruction without the use of an aircraft, and at some point you progress to the point of using an aircraft, but they are treated separately. Okay, let me ask you this. Let's say the decedent was not such an advanced pilot that he could fly. He was seeking to put time in as a solo pilot, that he, in fact, had an instructor with him, and they're both in the aircraft, and the same accident occurs. Would your client be disputing that coverage exists? I expected you to ask that question. I thought you might, yeah. The student pilot would not be insured under the policy even in that scenario. What we find is typically in that scenario there isn't going to be a rational claim against the student pilot for which the student pilot would require liability protection or defense, because typically when the student is with an instructor it's going to be hard to blame the student, and after all we're talking about liability coverage. But the answer to your question is no, the student would not be insured. Well, then let me expand the question. Okay. If an accident occurs midair with a student pilot and an instructor hired by Franklin or employed by Franklin, would there be coverage under the Hallmark policy? There would be coverage for Franklin. There would be coverage for the flight instructor. There would be coverage for the accident, right? Well, these policies have Hall coverage and liability coverage, so there would be coverage for the hall. There would be liability coverage for Franklin if it was accused of wrongdoing, and the instructor who is a permissive user who is not renting. There would be no coverage for the student pilot who is renting the aircraft unless he has his own renter's pass. Well, I don't understand why there would be no coverage for the student pilot unless the student pilot was claiming, unless the estate of the student pilot, because we're assuming he's deceased, was claiming that the instructor misinstructed him somehow or other and caused the accident itself. I mean, we're not there. We're saying, assuming that the same accident happens, is there at the very least a duty to defend by Hallmark under that situation? There is no duty to defend the student pilot. The student pilot is renting the aircraft just as one rents the car. Well, let's say that the… We don't insure the student who rents. He's a customer. He's a third party. We don't insure him. My point is this, that it seems to me that under the policy, under the terms of the policy, if an accident in midair occurs, Hallmark will defend the student pilot, the instructor pilot, whoever sued arising from that midair collision. The student pilot, again, at least in my experience is typically not sued in that scenario because the pilot in command in the aircraft is the instructor, so it is a bit of a hypothetical. It is. It really goes to the next question. Because the pilot was on the ground, the pilot in command, in this case, was on the ground as opposed to in the aircraft with him, with the decedent. Why does that make a difference and why doesn't that at the very least give rise to an ambiguity in the policy? Because the policy doesn't seem to exclude student pilots even when they're flying solo, so long as there are no passengers in the aircraft. You've actually asked a couple of different things there, if I might respond. When a student pilot with solo privileges is in the aircraft alone, the student pilot is the pilot in command, even if there's an instructor on the ground. The instructor on the ground can't see what the pilot's doing, so consequently that is a fully licensed pilot with student solo privileges and limitations. It doesn't make any difference. Let me ask you this. Does the policy address that scenario? The policy provides that anybody providing enumeration to the named insured, anybody who's renting, just like somebody renting a car, has to have their own insurance. They are not covered under this policy, whether the instructor's in the airplane, on the ground. Some student pilots never get certified and they've rented for years. Why didn't your policy say that a student pilot flying solo is deemed to be a renter pilot? Because it didn't need to. The circuit court judge certainly didn't agree with that, did he? That's a fact. I disagreed with Judge Martin. I continue to disagree with Judge Martin. It is pretty simple to figure out if somebody's renting an aircraft, particularly simple here where we have statements that show that he was renting it in an affidavit. He's either renting or he's not, and I don't think it was the trial court's job to go into the scope of coverage to try to redefine who's insured. He's either renting or he's not, and if he's renting he's not insured under this policy. I think the trial court's problem, the trial judge's problem was that he couldn't figure out whether this person who was flying the plane was to be categorized as a student pilot or a renter. And I think that the, my question is, the problem arises from the fact that the policy says that anybody that you insured, anybody that you let fly this plane is going to be covered, and then it says, except student pilots won't be covered if there's a passenger. So my question is, unless that passenger is somehow licensed or whatever, my question is, when you say student pilots won't be covered if there's a passenger, isn't that implying at least that a student pilot flying without a passenger would be covered? And I think that's what Judge Martin's confusion stemmed from. The policy does not state that a student pilot will be covered except when they're carrying a passenger. The policy states that the insured, as defined by the policy, which is Franklin, will be covered for its liability with a student pilot flying the aircraft provided that Franklin doesn't allow that student to take a passenger. That is scope of coverage. Franklin is renting aircraft. Franklin is allowing students to fly aircraft. Franklin is allowing students to show up with solo privileges and take the airplane on their own. It is imperative that Franklin, under this policy, not allow any of those students to bring one of their friends because then Franklin will not be covered. The policy does not say anything about a student pilot being covered as long as they don't carry a passenger. Your position is whether he's a student pilot or not, because he's a renter pilot, he is not covered. He is not an insured, and he is not covered. That is correct. Pilots have various certifications, airline transport, student, recreational, commercial. The policy does not and reasonably could not identify every category of pilot. You're either a licensed pilot or you are not. A student pilot is a licensed pilot with restrictions. Sometimes student pilots rent aircraft for years without ever becoming certified. They are still running the aircraft, and they have no more expectation to be insured by the FBO's policy than we would have to expect to be insured by the insurance company that insures a rental car company. The policy is simply not that broad. It doesn't provide that coverage, but the scope of coverage, the provisions of the policy that talk about what is covered, still have to address flight instruction and what activities involving students would not be covered. And in their brief, the appellees argue that you can see from the policy that there is an intention to cover student pilots. I couldn't agree more. There is, provided the student pilot is not renting the aircraft. And we typically see... So how do you distinguish that situation? Well, we typically see situations... Fixed-base operators that own aircraft use the airplanes that they rent for their own personal use as well. They loan them to friends. They let their employees use them. The concept under the policy is that your commercial customers, the people who are renting, are not covered. If one of your linemen is a student pilot, taking free instruction in the plane with your permission, that's a different scenario. That's within that control in terms of a risk assessment of the named insured. That's covered. It's simply somebody who is renting the aircraft. They're not covered. There's a different segment. There's a different product in the market to cover that, which is renter's insurance. And the point I would make is that every single case cited in these briefs that addresses these types of exclusions, everyone has concluded that these exclusions apply and that somebody has not simply become an insured simply because they rent it or they're a student. I have to go back to my original question. That concerned the situation where you have a student pilot along with an instructor pilot in the aircraft at the same time, and you say that Franklin would be covered then, or your policy could be – coverage could be sought under your policy if an accident happens. I'm not talking about suing the student pilot. I'm just talking about coverage under your policy, that it could in fact – your policy would offer coverage for whatever linemen. It would cover the whole and it would defend anybody who's identified as an insured. And so let's say Franklin has an individual who claims that he has reached the point of being a solo pilot. And Franklin negligently allows that individual who makes that claim to fly the plane solo. But it turns out that the individual didn't qualify to go as a solo pilot. You know, why shouldn't Franklin be covered under those situations, under that situation where, you know, it negligently allowed somebody to go up in the air that shouldn't have been allowed to go up in the air solo? I presume that Franklin would be covered in such a scenario. The fact is student pilots don't get to fly solo based on their representation. They have to be signed off by a certified flight instructor under the FARs. But let's assume for a minute that it's – How do we know that that situation isn't this situation? I mean, isn't that what a trial is all about, to sort out the factual questions? This case isn't about whether Franklin is entitled to coverage under a scenario. This is about whether Mr. Nesovich, who came and rented an airplane regularly from this facility, is entitled to be insured under a policy he did not purchase, he did not negotiate, and probably didn't know about. That's the issue here, not whether or not Franklin is insured. Franklin is absolutely insured. When are student pilots covered? A student pilot could be covered in a scenario where they're a permissive user of the aircraft and they're not paying a rental fee for the aircraft, again, such as a friend or relative of the fixed base operator owner, a lineman. The concept with all of these policies is to allow the FBO to use the aircraft as its own, allow it to lend out the aircraft and have coverage for itself and those to whom it lends the aircraft, so provided they meet the open pilot warranty of the policy, but to draw a line where they're renting to commercial customers who are third parties who the insured presumably may not have as much control over. My question is, how do you draw that line when you have a situation where someone is taking flight lessons from this FBO and is flying around with a flight instructor in the plane with them, and then as part of his instruction one day they say, okay, now it's time for you to fly solo. I'll be on the ground. I'll be talking to you on the radio. You go fly solo. Now, is there a difference under the policy, you know, when he's in the plane with the instructor taking lessons as opposed to when he's in the plane by himself with instructors on the ground saying do this and do that? I mean, is there a distinction in the policy among those two scenarios? There is no distinction in the policy. Student pilots who are renting the aircraft and taking instruction in the aircraft are not insured. If they're sued, they're not covered. So your position would be that in my first scenario you also would not be covered? You are not covered. They're never covered. Never. As a matter of fact, most student pilots are made aware when they start flight training, be careful, get a renter's policy, because they'll subrogate against you if you're in the airplane and something happens. Now, you're free to blame the instructor for not grabbing the controls in time, but their insurer will subrogate against you. In this case, you'll see from Mr. Verheit's affidavit the statements of all of the previous flights that were taken, aircraft rental, lock rate, and then the instruction listed separately. In this business, you rent airplanes. Student pilots either own an airplane or they rent one or they borrow one. That's it. Most student pilots rent. And most FBOs are in the business of renting to students. Many students bring their own instructor and don't use the FBO's instructor. Some FBOs have no instructors. But the bottom line is it's an aircraft rental. A student pilot, particularly one who's solo privileged, is a licensed pilot. They're piloting command when they take the aircraft. They're renting it just as anybody else. Could our definition of who is not protected in terms of rental have more terms in it? Could it refer to student pilots? But it doesn't need to. The fact that other policy language cited in other cases in these briefs has additional words in it that are redundant doesn't make our policy less understandable. If you rent the aircraft, you are not insured under the policy. Franklin still is. You are not. So the question I have is this, you seem to be suggesting that the coverage turns on who the plaintiffs were suing. And to the extent they don't sue Franklin for negligent entrustment of the aircraft or something like that. And if they sue only the pilot, the decedent, that he has to qualify as a someone that Hallmark protects. They just can't do it because Hallmark doesn't ever protect a student pilot. They only protect the employee of Franklin responsible for the instruction that is being given to that individual. If it appears that's what I'm suggesting, I'm not being a good advocate today because I'm not suggesting it, I'm affirmatively stating it. It's from my end that that's what I'm finally understanding. If Franklin had been sued, I'm not trying to give anybody in this room ideas, but if Franklin had been sued, they would be insured for this loss. It turns out, however, that the student pilot is the one who's been sued, and this policy wasn't purchased by him, it isn't for his protection. I think the trial court record is clear with the unrefuted affidavit of Mr. Verheit that he in fact rented the airplane regularly, he was alone in the aircraft having rented it that day. Our policy provides that if you rent the aircraft, you're not insured, and I think that's where the analysis begins. Let me get to another point of possible misunderstanding on my part. Case law, of course, discusses the broader duty to defend and the narrower duty to indemnify, and usually, my understanding anyway, is that those are separate questions, and you really generally don't have to get to indemnification until a duty to defend has arisen or the duty to defend has been forfeited by failing to defend when the opportunity arose. There's some suggestion in the plaintiff's brief, in the appellee's brief, that you've given up your right to challenge the duty to defend, but has the underlying cause of action actually come to a conclusion and to the extent that liability has been imposed upon the truly culpable party here, including the possible decedent? The underlying lawsuits back and forth continue to pen. Cirrus and the maker of any collision system are all involved. So that litigation is not resolved as respect to anybody. As respect to the duty to defend, candidly, I was pleased to see the appellee's lead with an estoppel argument in their brief, because to me, nothing says, wow, our guy's not insured under this policy, like saying they're going to use that in the trial court, and clearly if he's not insured, we can't be estopped, and it's not a four corners analysis. And so, you know, my view of that argument, and then arguing that we're entitled to defense costs at least until the appellate court were to reverse if it does, to me, those are a weak need, because if you believe he's insured, then come out and tell us why he's not a runner pilot and tell us why he's not insured, and that isn't what they lead with. This isn't the four corners case. We didn't have a duty to defend because this person clearly and unequivocally does not come within the definition of who is a protected person under our policy. I think the follow-up question is, why did this go all the way to the duty to defend? I'm sorry. Let me rephrase it. Why did this go all the way to the duty to identify in Judge Martin's order? Usually, just picking up on what Justice Garcia asked, usually you have cases that deal with the duty to defend, and then the deck action is usually stayed until then the duty, there's cases that say that the resolution of the duty to identify is premature before there is a finding of liability. So I'm just curious. I think the question is, we're curious as to why this went so far. Well, there's some extraneous, well, in my opinion, extraneous matter in the briefs that's not before this court that's aroused your curiosity. I was hoping to judiciously avoid the topic, and you've prevented me from so doing. I'm sorry. That's okay. You're here to ask questions, and I'm supposed to try to answer them. There is a dispute in the trial court with respect to not indemnity, and Judge Martin hasn't made any post-decree conclusions with respect to indemnity. There's a disagreement as to whether we, Hallmark, were required to pay contemporaneous defense costs as they were incurred by the estate of Mr. Nezevich. Mr. Nezevich's counsel originally filed a wrongful death suit, then tendered the counterclaims to us. Hallmark's view is that until we have an opportunity to be heard in the appellate court, there is a dispute that we should not be required to pay defense costs. We made that case before Judge Martin. He disagreed. I had to report that news to my client, who was displeased. So you're talking about indemnification only of attorney fees? Of attorney fees, so defense costs. Okay, not liability. So the order that was uttered was holding us in, I guess, contempt because we hadn't paid any defense costs yet, and we paid about $100,000 in defense costs that I hear about from my client every day. But that's not indemnity. That's what the Nezevich estate has spent on defense costs. If you presume that it's all related to defense and not prosecution of the wrongful death claim, which is another dispute. One final question for me, anyway. And that concerns the procedure below, where you file a summary judgment motion saying we have no duty to defend because there was no coverage provided under the policy. The other side files a summary judgment motion claiming ambiguity. And ambiguity simply, and they really, correct me if I'm wrong, they didn't really have to file a summary judgment motion claiming ambiguity. They could simply have filed a response to your summary judgment motion saying that you're not entitled to a judgment as a matter of right because the policy is ambiguous. And to the extent it's ambiguous, the only way to resolve that ambiguity is by a resolution of the DEC action itself. Right. And actually, the interesting thing is that the Nezevich estate didn't file the cross motion for summary judgment. One of the other parties did. I don't know if the court finds that as interesting as I do. But this is correct. They wouldn't have had to file a cross motion. But I think the result, we would end up in the same place. Either the trial court would find ambiguity and therefore duty to defend or it would not. And so I think we would be in the same place. The issue might, interestingly enough, relate more to whether or not our rights to appeal would mature. And it's an interesting question. Yeah. All right. We'll give you time for rebuttal. Thank you. Good morning, Your Honors. Good morning. Colin Dunn on behalf of the Downey Defendants. I'm sorry, your name again? Colin Dunn. And just logistically, Your Honors, I'm here to talk about the coverage issue. Mr. Jones represents the Nezevich estate. He can talk about the estoppel arguments that were made as well as the identification arguments that you were just talking about. And you've discussed the splitting of your time because the time is for the side as opposed to the party. Correct. I think we've just heard from Counsel Volharmak that student pilots are covered under the policy. And frankly, I think that ends the discussion. Once we agree that student pilots are covered, nobody disputes in this case that the only reason Mr. Nezevich was flying this aircraft was in the role of a student pilot. That ends it. Either because they're covered or because there's an ambiguity in the sense that he certainly paid for the use of the aircraft in flying it. Well, there's a dispute. I mean, there's a difference between those two positions that you've just declared, between coverage for a student pilot and an ambiguous coverage clause, which may give rise to a duty to defend, but it doesn't necessarily give rise to a conclusion that coverage exists. I think either way, Your Honor, there would be coverage. Either if it's ambiguity, you have to read the policy in favor of coverage. If student pilots are covered, then they're covered. So either way, there's coverage. That's the other question I have because it doesn't seem to make sense to me that ambiguity alone, ipso facto, results in coverage. It simply results in ambiguity, and then you have to have a trial or some sort of resolution of that ambiguity in terms of if taking it in the light most favorable to the insured as opposed to the insurer, then you can reach, you can conclude that coverage exists. But it's also possible that coverage, even reading the clauses as being ambiguous, nonetheless forces a conclusion that coverage doesn't exist. I think there's another rule that comes into play with what you just said, Your Honor, and that is that you're to look at these exclusions narrowly and in the light against the drafter of the policy, which in this case is Hallmark. So if you take those two rules into play, there should be a finding of coverage, as Justice Martin found below, because we're talking about the only thing they've raised is one exclusion, and that exclusion has to be narrowly construed. Then let's go back to your original point, which is you say that once Hallmark acknowledges that the decedent was a student pilot, coverage necessarily follows. But what they're saying is that coverage, I mean their policy provides coverage for Franklin for a student pilot, but it does not provide coverage to the student pilot directly as someone they protect, because a student pilot simultaneously is deemed a renter pilot and therefore excluded. I think if you look at the policy, and I have it in front of me here, the liability of others section says that they protect, who is protected, any organization or person you permit to operate the aircraft. That's an extremely broad statement, and it doesn't include student pilots, and that's why Counsel for Hallmark cannot stand up here before you and say student pilots aren't covered. That's where you begin the reading of the policy, but then you have to look to see how it is narrowed, because they're always narrowed. You're not going to let everybody who operates the aircraft to be covered. No insurance company would ever do that. And what Judge Martin found below, the problem is that the policy distinguishes between student pilots and students. And renter pilots in many places within the policy. There's obviously a difference in reality between somebody who shows up to Franklin Aviation and says I want to go fishing in the North Woods and rents an aircraft to go up there to do that, versus somebody like Mr. Knisevich. What if the student pilot who comes in with an instructor in hand, his own private instructor, who has nothing to do with the instruction itself, says we want to take the aircraft up? Why isn't that student pilot, admittedly a student, why isn't that student pilot, admittedly a student pilot, why wouldn't that individual or those two individuals be treated as a renter pilot when Franklin has nothing whatsoever to do with the instruction itself? That person, Judge, would be excluded under 3A, because they're talking about other aviation business activities. So if you have another instructor with you, then you're excluded under that provision. Here, obviously, we don't have that. It's hypothetically given to me. But because of the fact that there's this broad granting of coverage for liability to others, so they're specifically talking about Mr. Knisevich crashes this plane, we're going to cover him. We're not talking about injuries to himself, we're talking about liability because of his conduct. That's what section part three of their policy talks about. So they're certainly protecting Franklin Aviation, but this provision, this section, specifically discusses we're going to protect other people, too, because of their negligent conduct, and it's extremely broad. So all the cases that Hallmark Council has cited to you, all of them, either had an express exclusion for student pilots, or a reference to somebody engaged in a training program. And so I think, you know, they've cited the aviation insurance industry to say that this would blow up the industry if the court would affirm Judge Martin's decision, but I think you have to look at the fact that they've known about these cases for 40 years, and they've changed their policy for some reason because of whatever reason that may be. And the way the system is set up here, you have to construe their policy against them. And that's exactly what Judge Martin understood below, and that's why he found there to be coverage below, because he couldn't say that Mr. Knisevich was a renter pilot as the policy contemplates. Okay, and that's why he didn't say he's absolutely not a renter pilot. I don't think none of us can say that, but what he found below was that I can't tell. And if you can't tell under the way the system is set up, that means that there's coverage, because you have to construe the policy against them. There's a definition of renter pilot. It says a renter pilot means any person, any person or organization who is renting the aircraft from you. And then it says, who is not covered, renter pilots. Right. And if you can't tell who rents the aircraft from them as a renter pilot, how is that ambiguous? Because if they didn't mean to cover student pilots, they wouldn't have had to have a definition of a student pilot. They wouldn't have had to have this separate exclusion referencing student pilots. You would just say renter pilots, because that covers everything. But they did include a definition of a student pilot. But you earlier said that a student pilot that brings his own instructor under the policy is not truly a student pilot under the policy, because it falls under other business use. Under 3A. But he is a student pilot. So why can you exclude a student pilot when he brings his own instructor? And yet claim that a student pilot, when he's under the guidance of Franklin, is not, is, take that back. Why can a student pilot who brings his own instructor be deemed a renter pilot, but a student pilot who does not, who relies on Franklin for instruction is not a renter pilot? I think once you're a student pilot, you're a student pilot. I thought you said in the first scenario, he's not a student pilot. I must have misunderstood the question. I'm sorry about that. If you bring your own instructor, that scenario is covered under 3A. But he's still a student pilot in that scenario, right? He is. Absolutely. But he's not covered. The student pilot would be covered under any scenario under the way this policy is set up. Or at least it's ambiguous as to whether or not. Right. And this is not an easy issue. This is not an easy issue for Judge Martin below. And we are not saying here that nobody could ever find that he was not a renter pilot. But you mentioned the trial below. We could try the case, but the issue is here. The way I understand the law to be set up is if there is an ambiguity as to coverage, that's construed in favor of coverage. And that's what Judge Martin found below. I'm anticipating Hallmark's response to your point about the reason why they had to define a student pilot. And I think as I understand Hallmark's response, it would be, well, the reason why we had to define what a student pilot is, is because that affects the scope of coverage under the what is covered section of the policy in terms of what we are going to cover the FBO for when student pilots are involved. And so if that's their answer, I'll give you an opportunity to rebut that, because if that's their answer, then we have to go back to the original who is covered section and ask you, where's the coverage? If it says, as Justice Lafren said, if it says under who is covered, you and any permissive user, but not a renter, where's the coverage for a student pilot? The coverage is, again, it's in the broad language of the coverage provision. And then you have to look at the policy as a whole. They want to pigeonhole him as a renter pilot. And I think you've heard that today from counsel for Hallmark. It's incorrect to say that this policy was solely intended to cover Hallmark and Mr. Berheide. But to be fair to counsel, I thought he said Franklin would be covered with a student pilot, but the pilot himself would not be covered. And you're seeking to impose liability, not through Franklin, but directly to the decedent. That's correct. And maybe then I misheard what he had said. I thought he had told us that student pilots are covered, and we would say that that's true because... I must have misheard, I'm sorry. If I misheard that, I'm sorry for that. The problem with that argument, though, frankly, is the broad scope of coverage here. Anybody who's flying that plane with their permission is covered unless there's an exclusion that applies. And the issue below, and the issue for this court here, is when you look at the policy as a whole, can you say that it's clear that student pilots are not covered? That's the only way you can find no coverage in this case, I believe, is to say this policy, that as a whole, clearly excludes student pilots. If the answer to that question is yes, they are covered, or maybe they are covered, then there's coverage. The only way there's no coverage is if they're not covered under the policy expressly. Unless there's any more questions. I think that Hallmark is going to get up and say the term student pilot has no relevance to the question of who is covered. That's what they're going to say. But if you look at the policy, it anticipates both instruction and rental. Those are two separate concepts under this policy. So it isn't like we just say rental, we don't care if you're running it to a licensed pilot or a student pilot, it's all rental. Under this policy, instruction and rental are separate and distinct uses for this aircraft, and it's contemplated under the policy. So all of these things are what led Judge Martin to say, look, it looks to me like student pilots are covered. They have never taken a position in the trial court below that they were not covered. I've never heard that before. So if he said that today, this is the first time they're saying that in this case. And because of all of that, Judge Martin felt, look, student pilots are covered, they look to be covered. Yes, he paid for the use of the aircraft, but any student pilot, frankly, pays for the use of the aircraft. I'm not sure about this loaning out to your friend kind of thing. I doubt that that actually happens. It could happen, certainly, but in the vast majority of cases, they're paying for the use. It's part of the policy that they can let people fly it for free. Of course, with your permission. And then they're insured. Franklin is insured. Someone we protect, talking about who we're protecting, who we're going to provide coverage for. A permissive user who is a friend is covered. Correct. A lot of times in these cases, you sue the pilot, the student pilot, and the person training them. Both of them. And it wouldn't make a difference who is covered, because one of those two is covered. And they're claiming that the student pilot is not covered, but the person who's training them, who's in the plane with him, is covered. And a lot of times, it's the same lawyer that represents both of them. So they're both getting a defense in the case against the allegations made by the plaintiff. Of course, insurance policies seek to cover risks. And they do so by exclusions to narrow that risk. And I can see where, if an employee of Franklin is instructing someone inside the aircraft, coverage exists for that employee. Maybe even for the student pilot. I can't say for sure. But when there is no one in the aircraft, and the student pilot is flying solo, the risk seems to be a greater risk than when the instructor is in the plane with him, that student pilot. And so to that extent, an insurance policy would try to exclude that risk. Because you can't control who's going to be in the plane by himself or herself. I think the difference is, you're right when you're talking about a renter pilot. A renter pilot is treating Franklin Aviation like Hertz. They show up, I want to rent your plane. And Hertz requires you to get your own insurance or buy their insurance. But they've never seen you before. They've had nothing to do with your training. They've never seen you. You're just walking off the street and your only relationship with them is they're handing you the keys and you're paying a check. When you're talking about a student pilot who's getting training from Franklin Aviation, I don't care if it's solo or not, that student pilot can do nothing in that aircraft without Franklin Aviation signing off. But you would presumably, in that scenario, sue Franklin and not just the student pilot. And to that extent, you have to have allegations of negligence on the part of Franklin. And Franklin is saying, they didn't sue us. They only sued the pilot. And to the extent that the pilot is solely responsible for his own conduct while in the plane, Hallmark's policy doesn't cover him. The question is, why didn't we sue Franklin Aviation? That's above my pay grade. I don't know why exactly they won't sue. But if the question is a risk assessment, it makes sense, frankly, from our standpoint, that the risk would be the same. Because the risk that they're insuring is somebody that they've trained to fly this aircraft. That's why it makes sense to stick them with that risk that's part and parcel. It absolutely does not make sense to have them insure a risk of a renter pilot who they've never seen before, who they have nothing to do with their training. I agree with that. If Mr. Kunicevic is just a renter pilot, we wouldn't be here today, obviously. Unless there's any more questions. Are there any questions, Mr. Jones? Thank you. I want to address briefly the duty to defend and how it relates to the Estoppel issue. Because as interesting as this discussion is, I don't think you even have to get there in this case. Because here's what happened. The estate of Kunicevic was sued by all of the estates of the people who died in this airplane disaster. They tendered the defense to Hallmark. And Hallmark, instead of defending the claim, decided unilaterally, based upon extrinsic evidence and relying upon a clause in an insurance policy that at least one judge has determined is ambiguous, that we're not going to defend you. They flatly denied a defense. And under law everywhere, especially Illinois, that's a breach of the duty to defend. And once they've breached their duty to defend, they're no longer able to rely upon exclusions to cover. I thought that was an anticipatory breach of the duty to defend as opposed to the immediate breach. No, it was tendered to them. It's tendered to them. What if nothing flows from that tendering? There's no obligation to go to court. No, they were sued. The estate was sued on many fronts, by all of the estates of the decedents and by contribution claims by the product manufacturers who were involved. But you seem to be suggesting that if they don't defend in a timely fashion, they breached forever. And does that really lead to a full-blown-out breach when immediately thereafter a deck is filed and they're saying, we don't have a duty to defend here, and that duty is going to be resolved in that proceeding? No. The duty to defend is measured at the time the complaints are filed or the claims are filed. Here, they defended it even before any of the complaints were filed. And none of the complaints alleged that Mr. Knizovich was a renter pilot. They had to go outside of the policy. They had to get an affidavit from the insured to establish these purported facts about the renter pilot status. And then they had to rely upon an exclusion in an ambiguous policy to say there's no duty to defend. And let me also have you read GAINSCO, which is a more recent Illinois Supreme Court case. I'm sorry, what was that second one? It's GAINSCO, G-A-I-N-S-K-O, versus Midwest Sporting Goods. It's 215 Hill 2nd, 146. And it says an insurance company may not define its duty to defend based upon a deck action. Where a duty to defend exists, they can't say, no, I'm not going to defend you, and I'm going to wait until the appellate court decides that we no longer have a duty to defend. And it took in a contempt order to get them to pay the bills for the defense in this case. And having breached that policy, having been in breach for years, they're not able to rely upon an exclusion, which is on its face as ambiguous. And I concur with Mr. Dunn that an ambiguous policy is construed as a matter of law. And there's coverage here. There's no question he was a permitted user of the plane. And you can't say that there's never any coverage for a student pilot when they go ahead and defined it in great detail, both in the policy language and in the endorsement. So without any other questions, I'll turn it over. Wasn't there a deck action filed initially in Wyoming? There was. Hallmark filed a Wyoming declaratory judgment action, and the state of Kanishevich filed an Illinois declaratory judgment action. The Wyoming action was dismissed in favor of the Illinois action. Isn't that what their obligation is? No. Isn't their obligation to either defend with a reservation of rights or file a deck action? No, that's not what Gansko says, unless it's absolutely clear on the face of the underlying complaints in the policy that they're empowered to turn it down. They have to defend. They cannot defend. But who decides whether it's absolutely clear on the policy? Well, they could have taken their chances and gone to Judge Martin and said, Judge Martin, look at this. There's no coverage here. Judge Martin might have said, yeah, you're right. They might have avoided a stop on those circumstances. But in the circumstances where there's an ambiguous policy and they have to go to extrinsic facts, they can't just compare the underlying complaint to the policy and say there's clearly no coverage. In those circumstances, they have to defend. And if they want to terminate their duty to defend, that happens after the deck action is filed, and they can terminate their duty to defend if they win. But it's not defined by it. The idea that you can satisfy your defense obligation by suing your insured is just antithetical to everything that insurance stands for. And your position relies on that extrinsic evidence, that affidavit? Well, they don't say look at the complaint and look at my policy. It's excluded. They have to go outside of it, which is what happens in claimants. To that extent, an insured or putative insured couldn't decide whether coverage exists or not if they're going to rely on extrinsic evidence. Once a claim is made, they have to defend. They have to win in the trial court to terminate that duty to defend. But they breached it. They didn't defend and took a contempt order to get them to start paying the bills. But it's a breach of the duty to defend. They were stopped from raising any policy defenses. All right. Outnumbered and outgunned, but I'm going to do my best here to wrap up in two minutes or less. I've made some bullet points here, and I could very quickly go through them if that would please the court. I heard the statement that if a student pilot is either covered or they're not, and I don't know what restriction would be on an insurance policy to require that one be covered or not. I did state that student pilots could theoretically be covered, and I gave the lineman example, which isn't an uncommon scenario where an FBO will let its lineboys or girls learn to fly and use the airplane. They're not a renter. They are a student pilot, and they would be covered. I've heard the comment that exclusions should be narrowly construed. That's absolutely correct. However, we're talking about who is an insured. We're not talking about the exclusions on the policy. So either the student pilot here was an insured or he was not. We're not seeking to apply an exclusion. I heard the comment that the policy distinguishes between renter and a student. Where? Where does it do that? It talks about student pilots and defines them. It talks about renter pilots and defines them. Where does it distinguish between the two? I don't see that. I heard counsel say that nobody can say that this person was not a renter. I sure agree with that. I heard the question asked if the policy does not intend to cover students, why do we have an exclusion regarding students? Well, Franklin is running a flight school. I suspect that it would be hard to write a policy without referencing students anywhere in the coverage for Franklin. As respects to estoppel, I don't have a lot to say on estoppel. The law in Illinois, as in many jurisdictions, is that when confronted with a situation where an insurer believes it does not have a duty to defend, it may deny and file a declaratory judgment action. We picked option three to be on the safe side. I'm not sure why the implication is that we simply denied and walked away. I also feel that when a putative insured so clearly and unequivocally comes outside of our coverage, we're well within our right to select option one and simply deny. That isn't what we did. For the foregoing reasons, I would ask that the court reverse the order of the trial court and enter a finding. It would also be, as I understand it, your position that estoppel doesn't apply. You cannot be estopped in the coverage. Right. Estoppel is typically a doctrine used to preclude an insurer from raising a policy defense, which many practitioners fail to appreciate as different from the existence or nonexistence of coverage under the coverage grant. In this case, we're talking about a grant of coverage. We're not raising a policy defense. Estoppel isn't really our game here in the first instance. Thank you very much. The case will be taken under advisement of the courts in recess.